John NEAL, Plaintiff-Appellant,

v.

William HELBLING, et al., Defendants-Respondents.

No. 51097.

Missouri Court of Appeals, Eastern District, Division Two.

March 17, 1987.

Doris Gregory Black, St. Louis, for plaintiff-appellant.

James J. Wilson, City Counselor, St. Louis, for defendants-respondents.

REINHARD, Judge.

Plaintiff brought this action against three City of St. Louis Police Officers, seeking to recover damages in Count I for assault and battery; in Count II for malicious prosecution; and in Count III for slander. At the close of all of the evidence, the court sustained a motion for directed verdict for each defendant on Count III. The jury returned a verdict in favor of plaintiff against each defendant on Count I in the amount of $5,000 actual and $5,000 punitive damages, and the jury returned a verdict in favor of defendants on Count II. Plaintiff filed a motion for new trial on Count I, limited to the issue of damages, and on Counts II and III. Defendants filed a motion for new trial on Count I, asserting instructional error. The court sustained defendants' motion and denied plaintiff's. Plaintiff appeals. We affirm.

On appeal plaintiff contends that the trial court erred in granting defendants a new trial on Count I because of the alleged error in plaintiff's verdict directors. He also contends the trial court erred in not granting him a new trial on the issue of damages because the evidence showed that the damages awarded were grossly inadequate. As to Count II, he contends the court erred in not granting a new trial on the issue of malicious prosecution "where the substantial and credible weight of the evidence established that claim." He further contends the court erred in granting a directed verdict for the defendants on Count III.

Plaintiff's evidence indicated that on August 6, 1981, he was riding through Tower Grove Park, in the City of St. Louis, when he stopped to get a drink of water at a fountain. As he prepared to alight, defendant Neske approached his car. Neske, a St. Louis City policeman on assignment in the park, was dressed in shorts and carrying a shirt. Neske leaned over plaintiff's car on the passenger side and began conversing with plaintiff. During the conversation, Neske asked plaintiff how much money he had, to which plaintiff replied about $1.48.

Neske began commenting about the type of car plaintiff was driving and persisted in asking plaintiff about money. Neske asked plaintiff whether he would be interested in "doing something." Plaintiff interpreted this as solicitation to engage in a sex act. Plaintiff declined, saying he

wasn't interested. As plaintiff prepared to leave, Neske pointed a gun at him, told him he was under arrest for soliciting prostitution, and got into his car.

When plaintiff asked to see Neske's badge, Neske briefly flashed a silver object. Plaintiff persisted in seeking Neske's identification but was told to shut up. Within a few minutes, defendants Helbling and Stewart arrived and plaintiff was handcuffed in front by Stewart. Helbling and Stewart were also police officers on assignment in the park. Helbling was attired in shorts and a shirt. Stewart was dressed in civilian clothes and was wearing long pants. Although plaintiff asked to see Helbling's and Stewart's badges, this request was denied. According to plaintiff, Stewart was driving an old, "beat up," dirty car.

When defendants tried to put plaintiff in the back seat of that car, plaintiff pushed Stewart away from him and began running. He did not kick him. Plaintiff's testimony at trial indicated that he felt reasonably frightened and feared for his safety because of the demeanor of the defendants, their appearance, and their refusal to identify themselves. Plaintiff testified that he thought he was about to be kidnapped and saw this as his only chance to escape.

Plaintiff ran, but fell on a grassy area. He did not hit his face. As he attempted to get up, the three defendants caught up with him; and while plaintiff lay on the ground, defendants began kicking him about the face, eyes, arms, head, legs and back. Plaintiff was bloodied. Plaintiff begged them to stop, but to no avail. Plaintiff testified that during the beating he saw a car with a bubble light on top, which appeared to be a park security car. At this point plaintiff began screaming for help. Either Stewart or Neske put his foot on plaintiff's head and told him to shut up. Helbling walked over to the car, said something to the occupant and the car pulled off.

After the beating, Helbling remarked that plaintiff looked pretty bad and that they'd better call an ambulance. An ambulance was called and plaintiff was transported to City Hospital. Before the ambulance arrived, plaintiff was "stood up" and handcuffed behind his back. While handcuffed in this manner, Stewart kicked plaintiff in the groin.

Plaintiff was subsequently charged with patronizing prostitution, resisting arrest, second degree assault (on Helbling), and third degree assault (on Stewart). Warrants for resisting arrest were refused and warrants for two counts of common assault third degree and patronizing prostitution were issued. On December 16, 1981, plaintiff was tried before a jury in the Circuit Court of the City of St. Louis and was acquitted of all three charges.

Defendants' version of the encounter differed from plaintiff's. Their evidence indicated that on the evening of August 6, 1981, they were assigned to work undercover in the area of Tower Grove Park to apprehend males patronizing (male) prostitution. Defendant Neske was the "decoy"; Helbling and Stewart were back-ups.

According to Officer Neske, plaintiff stopped his automobile and began a conversation as Neske was walking along a road within the park. In the course of this conversation, plaintiff offered Neske money (approximately $1.50) and marijuana if Neske would engage in a sex act with plaintiff. At that point, Neske identified himself as a police officer, informed plaintiff that he was under arrest, and ordered plaintiff to exit the vehicle. Neske showed plaintiff his badge.

Neske then signaled Helbling that a violation had occurred and he should assist. Helbling identified himself as a police officer, informed plaintiff that he was under arrest for patronizing prostitution, and read plaintiff his rights. Helbling also displayed his badge to plaintiff.

Stewart arrived shortly thereafter in an unmarked police vehicle. Stewart identified himself as a police officer and began escorting plaintiff to the unmarked car. When they arrived at the car, plaintiff pushed Stewart and kicked him, then began running north through the park. He fell on the grass after running a short distance, landing face first with his hands hand-

cuffed in front of him. Plaintiff fell down heavily on the handcuffs. Stewart and Helbling pursued plaintiff and apprehended him where he had fallen. While lying on the ground on his back, plaintiff started kicking the officers. Helbling and Stewart fell on top of plaintiff in order to restrain him and after 10–15 seconds he calmed down. They began escorting plaintiff back to the police vehicle and decided that they should handcuff plaintiff behind his back instead of in front. As Officer Stewart began reaching for the handcuff key, plaintiff kicked Officer Helbling in the groin, then in the head. Stewart threw plaintiff to the ground and hit plaintiff in the jaw with his fist. Officer Neske arrived at this point and struck plaintiff once over the left eye with his fist. This second struggle lasted only 10–15 seconds, during which time the officers were able to re-handcuff plaintiff behind his back. The officers kept plaintiff face down on the ground until the ambulance they had summoned arrived. It is police department policy that suspects charged with resisting arrest be conveyed to the hospital. We need not set out in detail the evidence regarding the injuries to plaintiff and the officers.

■ We first address the question of whether or not the trial court erred in granting defendant a new trial because improper verdict directors on assault and battery were given to the jury, which we perceive to be plaintiff's principal point on appeal. Plaintiff's verdict directors on the battery count were patterned after MAI 3rd 23.02. With the exception of the name of the defendant, the verdict directors on Count I were identical, and we set forth the instruction pertaining to Helbling:

> As to Count I, your verdict must be for plaintiff if you believe:
> First, defendant, William Helbling, intentionally struck plaintiff, and
> Second, defendant, William Helbling, thereby caused plaintiff bodily harm,
> unless you believe that plaintiff is not entitled to recover by reason of Instruction Number 8 and 9.

Instruction Number 8 provides:

> As to Count I,

> Your verdict must be for Defendant Helbling if you believe:
> First, that plaintiff was arrested;
> Second, plaintiff forcibly resisted such arrest, and
> Third, defendant Helbling used only such force as was reasonably necessary to effect the arrest.

Instruction Number 9 hypothesized self-defense.

At the instruction conference the defendants objected to plaintiff's verdict directors, contending that MAI 23.02 was inapplicable where the alleged battery was committed by a police officer effecting an arrest. They also argued that the burden of establishing an unreasonable use of force by an arresting officer is upon the plaintiff. Plaintiff's instructions were given despite these objections. Defendants renewed their arguments in their motion for new trial, which was granted.

The law on the issue of assault and battery by an officer effecting an arrest was stated by this court in *State v. Hines,* 148 Mo.App. 289, 128 S.W. 248 (1910). The plaintiff in that case sued the sheriff of St. Charles County and his bondsman for an assault and battery which occurred while the sheriff was executing a warrant for the arrest of the plaintiff. The verdict was for the defendant. The court had instructed the jury that "the burden of proof was on the [plaintiff], and that before he could recover he must prove by the greater weight of the evidence that in arresting [plaintiff] defendant ... used more force than appeared ... to be reasonably necessary to effect his arrest." *Id.* at 249. Plaintiff argued that there was error in that the burden rested with the defendant to justify the assault by showing that no more force was employed than appeared to be reasonably necessary under the circumstances of the arrest. The court said:

> There can be no doubt that it is the rule in civil actions for damages on account of assault and battery between private persons the plaintiff may make a prima facie case by merely showing the defendant applied a very slight degree of force to him in anger. In such circumstances

the assault is presumed to be unlawful, and it then rests with the defendant to justify it; that is to say, if the assault is prima facie shown or admitted, defendant must both plead and prove a justification for making the same.... But this doctrine should not obtain if the suit is against an officer clothed with the warrant of the law.... [T]he law vouchsafes to an officer clothed with its warrant the authority and right to touch the person ... [W]hile it may be unlawful in given circumstances for the private individual to touch the person of another, it is entirely lawful for an officer clothed with a warrant to do so, provided he uses no more force than is reasonably necessary.... *An officer clothed with the warrant of law is answerable in damages as for assault and battery only when in the performance of his duty in making the arrest he uses more force than is reasonably necessary for its accomplishment. This being true, it devolves upon the plaintiff to prove not only that the officer touched him in making the arrest, but that he used more force thereabout than was reasonably necessary to effect the arrest. The burden of proof therefore is different in a case when the suit is against the officer acting under warrant than in those cases where it proceeds against a private individual.*

*Id.* at 248–249 (citations omitted) (emphasis ours). Consistent with the holding in *Hines,* the supreme court stated in *Manson v. Wabash Railroad Company,* 338 S.W.2d 54,61 (Mo. banc 1960): "[T]he officer in the first instance is the judge of the manner and means to be taken in making an arrest. Unless a plaintiff can show that unnecessary force was used, courts will protect the officer." [citing 6 C.J.S. *Assault and Battery* § 23(1)].[1]

Plaintiff apparently argues that the rules stated above apply only in a case where the officer is executing a warrant. We believe that this interpretation of *Hines* and its progeny is too narrow. The officer's right to use reasonable force in effecting an arrest does not depend upon whether that arrest is made pursuant to a warrant, and the distinction urged by plaintiff does not have any logical basis. Whether or not the arrest is made pursuant to a warrant, a plaintiff asserting that he was battered in the course of an arrest must prove that the officer used unreasonable force in effecting it.

The instructions in this case clearly put the burden of establishing the use of reasonable force on the defendants and were therefore erroneous.[2] The defendants properly objected, and the court did not err in granting defendants a new trial on Count I. Our holding makes plaintiff's argument that he should have been granted a new trial on the issue of damages moot because he will have another opportunity to prove his damages.

Plaintiff also contends that the trial court erred in overruling his motion for a new trial on the issue of slander after defendants' motion for directed verdict on Count III at the close of all the evidence had been sustained. Plaintiff states that "the question of whether false statements were uttered to third parties was admitted by [defendants] and was a question of fact to be determined by the jury."

Defendants argue that the court's action was correct because there was insufficient evidence that they uttered any statements about plaintiff which would constitute a submissible case of slander per se. After oral argument plaintiff supplied us with the portion of the defendants' testimony which he asserts established a prima facie case of slander per se. There was no evidence of special damages, and no evidence

---

1. It is clear that the burden of proving the use of unreasonable force by an arresting officer is on the plaintiff. There is unsupported language to the contrary in *Davis v. Moore,* 553 S.W.2d 559 (Mo.App.1977). Insofar as *Davis* conflicts with this opinion it is overruled.

2. The burden of proof instruction submitted to the jury stated: "... if you are told that your verdict depends on whether or not you believe certain propositions of fact submitted to you the burden of causing you to believe the proposition of fact is upon the party whose claim or defense depends upon that proposition ..."

regarding defendants' statements other than their own testimony.

The testimony relied on by plaintiff indicates that Helbling gave Stewart information to assist Stewart in completing the arrest report. He also told his girlfriend and the doctor who treated him that he had been kicked in the head and groin by plaintiff. He "probably" told his partner as well.

Neske, following police department procedure, contacted the "Metropolitan Police Department news desk" and "informed them of the incident." The Police Department news desk "put[s] nothing in the paper." Neske testified "I can't recall telling anyone, other than that."

Stewart was asked if he told anyone that plaintiff had kicked him and Officer Helbling. Stewart testified that he told his sergeant, his wife and his children, and stated "I *may* have even told a neighbor. I *don't know,* but that's it." The arrest report and internal police department communications were not introduced into evidence.

■ Plaintiff's point is ruled against him. Plaintiff failed to supply us with a copy of the petition, therefore we are unable to determine what statements he claims were slanderous. We note that a plaintiff bringing an action for slander must generally plead and prove the actual words used by the defendants. *Brown v. Adams,* 715 S.W.2d 940, 941 (Mo.App. 1986); *Holliday v. Great Atlantic & Pacif-ic Tea Co.,* 256 F.2d 297, 302 (8th Cir.1958); *Fritschle v. Kettle River Co.,* 346 Mo. 196, 139 S.W.2d 948 (1940).[3]

The evidence in this case certainly does not establish the actual words spoken by defendants or the contents of any specific statements alleged to be slanderous. Nor does it establish with certainty what is charged as the slander. While any attempt to infer even the general nature of defendants' statements is speculative, it appears that, with the exception of the internal reports, the statements dealt simply with the injuries received by the officers. We note that plaintiff admitted he "may have kicked someone" during the struggle.[4] An extended discussion of the law of slander is not necessary; the meager record provided to us does not indicate that the trial court's ruling was erroneous. Plaintiff's point is denied.

■ Appellant also contends the trial court erred in overruling his motion for new trial on the issue of malicious prosecution "where the substantial and credible weight of the evidence" established a claim. Plaintiff seeks to set aside the verdict because it is against the weight of the evidence.

If the verdict was against the weight of the evidence the trial court, in the exercise of its discretion, could have set it aside. However, plaintiff bore the burden of proof and his evidence was not legally conclusive. After a trial court exercises its discretion by overruling a plaintiff's motion for new

---

3. *But see, Lorenz v. Towntalk Publishing Co.,* 261 S.W.2d 952 (Mo.1953), a case involving libel, in which the supreme court noted that:

It is said that the great weight of authority supports the view that the words used must be reproduced verbatim. 33 Am.Jur. 215, Sec. 237. It is also said that in libel the defamatory words must be set forth in heac verba, even though this is not always held essential in slander. 53 C.J.S. Libel and Slander, § 164, page 256. Townshend on Slander and Libel, 4th Ed., Sec. 329, says: "The complaint should set out, and purport to set out, the very words published"; and further states in Sec. 331: "The object, or one of the objects, of obliging a plaintiff to set forth in his complaint the very words complained against, is that the defendant may, if he desires it, by demurring, have the opinion of the court upon the actionable quality of the words." See also Newell on Slander and Libel 581, Sec. 534.

*Id.* at 953. We need not determine, for purposes of this opinion, what, if any, variations from the actual language uttered may be permitted in a slander petition.

4. In addition to plaintiff's admission that he may have kicked someone, we note the following exchange which occurred on cross-examination:

Q. Did they get you up and as they were attempting to rehandcuff you, you kicked Officer Helbling, the red headed officer, in his private parts, at which time he bent over and you kicked him in the head?

A. I kicked him in the head? No, that's not true.

trial on the basis that the jury's verdict was against the weight of the evidence, "an appellate court will not entertain the contention that the trial court thereby abused its discretion." *Bakelite Company v. Miller*, 372 S.W.2d 867, 871–72 (Mo. 1963); *see also Joseph v. Orscheln Brothers Truck Line*, 609 S.W.2d 238, 240 (Mo. App.1980). Furthermore, defendants' evidence established that they had probable cause for initiating the criminal proceedings against plaintiff. Plaintiff's point is denied.

█ Plaintiff further contends the trial court erred in dismissing with prejudice the State of Missouri as a party because "the state was not protected by the sovereign immunity doctrine." We have examined the record and we find no reference to a motion or an order pertaining to the State of Missouri. Since plaintiff has not supplied us with a copy of the petition we also are unable to determine whether or not the State of Missouri was ever a party to this litigation. This point is also ruled against plaintiff.

Judgment affirmed.

SMITH, P.J., and DOWD, J., concur.